**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Richard TAGGART, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 21, 2009.

Filed June 17, 2010.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., PANELLA and DONOHUE, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Appellant, Richard Taggart ("Taggart") appeals from the trial court's January 11, 2008 judgment of sentence. The trial court imposed an aggregate six to 12 years of incarceration followed by 5 years of probation for persons not to carry firearms,[1] carrying a firearm without a license,[2] carrying a firearm on public streets in Philadelphia,[3] and carrying a firearm with an obliterated serial number.[4] We affirm in part, vacate in part, and remand.

¶ 2 The trial court's Pa.R.A.P. 1925(a) opinion includes the following recitation of facts:

> On October 26, 2005, police received a radio call with "flash information" describing robbery suspects. Responding officers went to the location and saw the defendant and others who matched the flash information. When the officers attempted to investigate, this defendant fled. An officer pursued on foot and during the pursuit saw the defendant grabbing at his waistband. The defendant fell to the ground and the officer saw a gun fall out from his person. The officer told the defendant not to move, but the defendant picked up the gun and continued running. The defendant ran into a vacant lot, gun in hand, and fell again. Then the defendant tried to throw the gun on a roof, but it hit a wall. Police arrested the defendant and recovered the firearm, which was a Smith & Wesson .40 caliber gun with an obliterated serial number.

Trial Court Opinion, 1/12/09, at 2.

¶ 3 A jury found Taggart guilty of the aforementioned offenses after a two day trial ending on January 11, 2008. The trial court imposed sentence immediately following trial. Taggart did not file post-sentence motions and filed a timely notice of appeal on February 11, 2008.[5] Taggart raises four issues for our review:

> A. Did not the lower court err in denying the defendant's motion to suppress physical evidence in that the gun

---

**1.** 18 Pa.C.S.A. § 6105. The trial court imposed five to ten years of incarceration for this offense.

**2.** 18 Pa.C.S.A. § 6106. The trial court imposed one to two years of incarceration for this offense, consecutive to the sentence imposed for the violation of § 6105.

**3.** 18 Pa.C.S.A. § 6108. The trial court imposed no further punishment for this offense.

**4.** 18 Pa.C.S.A. § 6117. The trial court imposed five years of probation for this offense, to run consecutive to the aggregate six to 12 years of incarceration for § 6105 and § 6106.

**5.** The thirtieth day in the appeal period fell on Sunday, February 10, 2008. Thus, Taggart's notice of appeal filed on Monday, February 11, 2008 is timely.

recovered by the police was a product of forced abandonment where the gun fell from the defendant's person after the police initiated a *stop* of the defendant in the absence of either reasonable suspicion or probable cause and thereby unlawfully provoked the defendant's flight?

B. Did not the lower court err in permitting the police officers to testify at trial as to the contents of the radio call they received since this constituted inadmissible hearsay whose prejudicial impact outweighed its probative value?

C. Was not the evidence insufficient to prove beyond a reasonable doubt the crime enumerated under [18 Pa.C.S.A. § 6117] since insufficient evidence was admitted to prove that it was the defendant who had obliterated the serial number of the purported firearm, notwithstanding the *prima facie* presumption that derived from possession of the weapon pursuant to § 6117(b); furthermore, should not the aforementioned presumption existing under the version of § 6117 extant at the time of the defendant's sentencing have no effect upon the determination of the sufficiency of the evidence since that presumption was removed from the current version of § 6117 and the defendant should therefore enjoy the ameliorative effect of the deletion of that presumption from the statute?

D. Did not the lower court err by imposing a separate sentence for the offense enumerated under [18 Pa.C.S.A. § 6106] since that offense should have merged for purposes of the sentencing act with the offense enumerated under § 6105?

Taggart's Brief at 4.

¶ 4 Before we discuss the merits of Taggart's constitutional law claim, we address the Commonwealth's argument that he has waived any claim that Article 1, § 8 of the Pennsylvania Constitution provides broad-er protection than the Fourth Amendment of the United States Constitution. We observe that well-settled Pennsylvania precedent establishes that a police officer's pursuit of a fleeing suspect constitutes a seizure. *Commonwealth v. Cook,* 558 Pa. 50, 55, 735 A.2d 673, 675 (1999); *Commonwealth v. Matos,* 543 Pa. 449, 461–62, 672 A.2d 769, 775–76 (1996). In this regard, Article 1, § 8 of the Pennsylvania Constitution affords broader protection than the Fourth Amendment. *See, e.g., California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that an attempted seizure by a police officer does not trigger the protection of the Fourth Amendment).

¶ 5 The Commonwealth argues, however, that Taggart has waived this argument because his brief does not include an analysis, pursuant to *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), to establish that the Pennsylvania Constitution provides broader protection than the federal constitution in this case. We disagree. Our Supreme Court in *Matos* concluded, after conducting an *Edmunds* analysis, that pursuit by a police officer of a fleeing suspect constitutes a seizure. Because *Matos* established a point of law that is now well-settled and controlling, it would serve no purpose to require Taggart to copy and paste the *Matos* Court's *Edmunds* analysis into his brief. Moreover, Taggart specifically relies on *Matos* in his brief in support of his argument that pursuit of a suspect constitutes a seizure in Pennsylvania. Taggart's Brief at 24–25.

¶ 6 Thus, this is not a situation, as the Commonwealth contends, in which an appellant "offers neither caselaw nor reason to hold that [the Pennsylvania Constitution] offers protection different from the federal constitution." *Commonwealth v. Laney,* 729 A.2d 598, 600, n. 1 (Pa.Super.1999), *appeal denied,* 561 Pa. 690, 751

A.2d 187 (2000). Taggart has not waived his state constitutional law argument. As a result, the Commonwealth's argument pursuant to federal law that no seizure occurs until the suspect submits to police authority is not a basis upon which we can affirm the trial court's order denying the motion to suppress. *See* Commonwealth's Brief at 7–10.

¶ 7 For his first argument on appeal, Taggart argues that the trial court erred in denying his motion to suppress the gun that Taggart discarded while the police were chasing him on foot. Taggart argues that his pursuit by a police officer constituted a seizure and was not supported by reasonable suspicion. We review the trial court's decision according to the following standard:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Page*, 965 A.2d 1212, 1217 (Pa.Super.2009).

¶ 8 This Court has addressed the right to be free from unreasonable search and seizure, pursuant to the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution, as follows:

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop.

> Our supreme court has interpreted Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Stated another way, when one is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.

> In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*In re M.D.*, 781 A.2d 192, 197 (Pa.Super.2001) (internal citations and quotation marks omitted). Flight by the suspect can be considered suspicious activity, but flight alone does not give rise to reasonable suspicion. *Id.*

¶ 9 In *In re D.M.*, 566 Pa. 445, 451, 781 A.2d 1161, 1164 (2001) ("*D.M. II*"),[6] the defendant matched the description of a black male with a white t-shirt, blue jeans, and white sneakers. Police, who were only a block away when they received the call, found the defendant at the intersection where the radio call indicated he would be. *D.M. II*, 566 Pa. at 447, 781 A.2d at 1162. The defendant ran away as police approached. *Id.* Our Supreme Court concluded that the defendant's "unprovoked flight in a high crime area" was sufficient to create reasonable suspicion for police to pursue him and stop him. *Id.* at 450–52, 781 A.2d at 1164–65.

¶ 10 Likewise, in *Commonwealth v. Foglia*, 979 A.2d 357 (Pa.Super.2009) (*en banc*), police arrived at the scene within 90 seconds of the radio call and found the defendant matching the description of a man standing on a certain corner dressed in black, as per the radio call. The scene was a high crime area, the defendant walked away from the approaching police cruiser and grabbed at his waist band. *Foglia*, 979 A.2d at 359. Under those circumstances, we concluded that police had reasonable suspicion in support of a *Terry*[7] stop.

¶ 11 In *M.D.*, the defendant, while fleeing on foot from a police officer in pursuit, spit packets of crack cocaine out of his mouth. The pursuing police officer was acting on flash information he received over the radio regarding a robbery. We concluded that the crack cocaine should have been suppressed where the defendant "merely 'partially fit' the very generic description of the robbery suspect, and no other evidence of criminality was offered." *M.D.*, 781 A.2d at 200. As a result, we "decline[d] to hold that flight alone is sufficient to give a police officer reasonable suspicion of criminal activity." *Id.*

¶ 12 Finally, in *In re D.M.*, 556 Pa. 160, 727 A.2d 556 (1999) ("*D.M. I*"),[8] the defendant argued that police did not have reasonable suspicion to detain him based on flash information received over the radio. In *D.M. I*, the police officer received information that four or five black males committed a robbery at gunpoint. One minute later, the officer saw four black males, including the defendant, walking quickly one-half block from the crime scene, and did not observe any other males in the vicinity. The group abruptly changed direction upon seeing the police vehicle. *Id.* at 164–65, 727 A.2d at 558. We concluded that the officer's investigatory detention of the defendant was supported by reasonable suspicion. *Id.* In particular, we noted that the radio report was based on information from the victim, as opposed to an anonymous informant, that the group of suspects matched the race and number of suspects in the report, that they were the only people in the vicinity, and that the investigatory detention was close in time and location to the occurrence and scene of the crime. *Id.*

¶ 13 In each of the foregoing cases, the defendant's flight or evasive conduct was considered to be a relevant, but not sufficient, factor contributing to a finding of reasonable suspicion (or lack thereof), and

---

6. Our Supreme Court's opinion in *D.M. II* came after remand from the United States Supreme Court. *See In re D.M.*, 560 Pa. 166, 743 A.2d 422 (1999), *reversed, Pennsylvania v. D.M.*, 529 U.S. 1126, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000) (vacating the judgment and remanding for reconsideration in light of *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

7. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

8. We have labeled the *D.M.* opinions *D.M. I* and *D.M. II* for convenience, but they arose from separate prosecutions. The United States Supreme Court did not review the opinion we have labeled *D.M. I*.

in each case the appellate court required some other evidence of criminality *in addition to flight* to support the Commonwealth's assertion of reasonable suspicion. Against this background, we consider the facts before us on appeal.

¶ 14 The record reflects that Officer Timothy McGonigle received a radio report indicating that two black males, ages 16 to 18, robbed a food deliveryman. N.T., 1/9/08, at 22. One had on a black jacket and black pants, the other had on a black jacket with a gray hood. *Id.* An officer on the scene confirmed the report and issued a radio report that the perpetrators fled westbound. *Id.* at 11. The record further reflects that Officer McGonigle was three to five minutes away from the scene at the time of the initial radio report. *Id.* at 9. Acting on that information, Officer McGonigle proceeded to a location 4 to 5 blocks from the scene and observed three black males, including Taggart, walking together. *Id.* at 12. Taggart had on a dark green jacket. *Id.* at 12, 23. One of the other individuals had on a black jacket, and the other had on a gray jacket. *Id.* at 12. Taggart's two companions were eating food. *Id.* at 13. Officer McGonigle pulled over and requested the three men to stop, and when he got out of his police cruiser Taggart fled. *Id.* at 13, 23–24. During the pursuit, Taggart fell and a gun "fell out from his person." *Id.* at 16.

¶ 15 With Taggart on the ground, Officer McGonigle stopped, took a step back, and ordered Taggart not to touch the gun. *Id.* at 15–16. Taggart disregarded Officer McGonigle's order, picked up the gun, and continued his flight. *Id.* at 16. Another chase ensued, and Taggart discarded the gun when police had him cornered. *Id.* at 16–18. Taggart was taken to the victim for identification, but the victim did not identify Taggart, who was 31–years–old on the night of this incident, as one of the perpetrators. *Id.* at 20, 29–30.

¶ 16 Based on the foregoing, the trial court found that:

> [I]nitially the police and defendant were engaged in a mere encounter, then the defendant's flight escalated the encounter to one of reasonable suspicion, and finally, when the officer saw the gun in the defendant's possession there was probable cause for an arrest. First, during the initial encounter where the defendant fit flash information received by police and was eating food after a delivery man was robbed, the police did not need any level of suspicion.

Trial Court Opinion, 1/12/09, at 3.

■ ¶ 17 We conclude that the trial court's factual findings are not supported by the record. The record fails to support the trial court's findings that Taggart was eating food, or that he fit the description of one of the robbers. The record makes clear that Taggart's two companions had food, but Taggart did not. N.T., 1/9/08, at 13. Furthermore, Taggart, a 31–year–old man with a dark green jacket on, did not match the description of the two robbers, who were reported to be 16–18 years of age, with one wearing a black jacket and black pants, and the other wearing black with a gray hood. Additionally, Taggart was among a group of three men, not two as per the radio report. Unlike the defendants in *D.M. I, D.M. II,* and *Foglia,* Taggart did not match any particulars of the radio report other than race and gender.

¶ 18 Taggart's companions partially fit the description provided over the radio in that one had on black clothing and the other gray. Both men had food, and they were accused of robbing a food deliveryman. The record contains no information on the other two individuals as police apparently did not pursue them. Taggart's presence alongside two individuals who partially fit the description of the two rob-

bers does not in any way implicate Taggart.

▮▮▮ ¶ 19 We further conclude that the trial court committed an error of law in finding that Taggart's flight provided Officer McGonigle with reasonable suspicion in support of Officer McGonigle's pursuit. The facts before us are much weaker than in cases such as *D.M. I* (defendant matched the description and was apprehended close in time and location to the reported robbery), *D.M. II* (defendant matched the informant's description, was found near the scene, and engaged in unprovoked flight in a high crime area), and *Foglia* (the defendant matched the description, was in a high crime area and grabbed at his waist band), where reasonable suspicion was found to exist. Taggart's apprehension was more remote in time and further from the scene of the crime than any of the defendants in those cases. The record does not reflect that Taggart was in a high crime area when he fled. The record on appeal fails to reflect any factor other than Taggart's flight that could support a finding of reasonable suspicion. As we have explained, flight can contribute to a finding of reasonable suspicion, but flight alone is insufficient. *M.D.,* 781 A.2d at 197. Since Officer McGonigle's initial pursuit of Taggart was based on flight alone, it amounted to an unlawful seizure.

▮▮▮ ¶ 20 We must now determine whether the unlawful seizure requires suppression of the gun. Pennsylvania courts have commonly held that contraband discarded during an unlawful pursuit must be suppressed. *Matos,* 543 Pa. at 451, 672 A.2d at 770; *M.D.,* 781 A.2d at 197. This rule applies with equal force when the discarded item is a *gun. Commonwealth v. Albert,* 767 A.2d 549, 552 (Pa.Super.2001). Pursuant to this line of cases, the gun in the instant case would have to be suppressed if Taggart had simply surrendered himself when he fell down and dropped the gun. This case is unique, however, in that Taggart retrieved the gun in defiance of Officer McGonigle's order and fled a second time.

¶ 21 Our Supreme Court's analysis in *Commonwealth v. Jackson,* 592 Pa. 232, 924 A.2d 618 (2007), is instructive. In *Jackson,* a police officer approached the defendant on suspicion that the defendant was gambling, in violation of the city code. *Id.* at 234, 924 A.2d at 619. The defendant fled, despite the officer's order to stop, and the officer pursued him. *Id.* The initial pursuit by the police officer was not lawful. *Id.* at 237, 924 A.2d at 620. The defendant assaulted the officer when the officer caught up with him. *Id.* at 234, 924 A.2d at 619. After the assault, the defendant fled a second time. *Id.* The Supreme Court reasoned that where a suspect commits a crime in the course of fleeing from an unlawful arrest, the pursuing officer has probable cause for an arrest for that crime:

> The initial illegality does not give the arrestee a free pass to commit new offenses without responsibility. Neither does that initial illegality "poison the tree," preventing lawful police conduct thereafter—the new crimes are new trees, planted by [the defendant], and the fruit that grows from them is not automatically tainted by the initial lack of probable cause.

*Id.* at 237, 924 A.2d at 620.

¶ 22 Taggart, as we have noted, was convicted of carrying a firearm in the city of Philadelphia without a license. 18 Pa. C.S.A. § 6108. We have held that an officer's observation of an individual carrying a handgun on public streets in the city of Philadelphia gives rise to probable cause for an arrest under § 6108. *Commonwealth v. Romero,* 449 Pa.Super. 194, 673

A.2d 374 (1996); *Commonwealth v. Davis,* 418 Pa.Super. 318, 614 A.2d 291 (1992).[9]

¶ 23 In the instant matter, as in *Jackson,* the initial pursuit by Officer McGonigle was not lawful. Also as in *Jackson,* the initial pursuit came to a stop when Taggart fell down and the gun appeared. When Taggart retrieved his gun in defiance of Officer McGonigle's order and fled once again, Officer McGonigle had probable cause to arrest Taggart for a violation of § 6108. Thus, Officer McGonigle was in lawful pursuit of Taggart when Taggart fled the second time. Accordingly, the trial court did not err in denying Taggart's motion to suppress the gun. Taggart's first argument fails.[10]

¶ 24 For his second argument on appeal, Taggart asserts that the trial court erred in admitting into evidence the contents of the radio flash information. The Commonwealth sought to admit the flash information to explain the police officers' course of conduct in arriving at that location where they first observed Taggart and his companions. We review the trial court's evidentiary rulings for abuse of discretion. *Commonwealth v. Bozyk,* 987 A.2d 753, 756 (Pa.Super.2009). Our Supreme Court has addressed evidence of police course of conduct as follows:

> It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted.

*Commonwealth v. Yates,* 531 Pa. 373, 375–376, 613 A.2d 542, 543 (1992) (quoting *Commonwealth v. Palsa,* 521 Pa. 113, 117, 555 A.2d 808, 810 (1989)). The Supreme Court cautioned, however, that trial courts should take great care not to admit such evidence if the jury might consider it substantive evidence of guilt:

> Nevertheless, it cannot be said that *every* out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Id.* (emphasis in original).

¶ 25 The trial transcript reflects the following exchange between the prosecutor and one of the testifying police officers:

> Q. What did you or your partner do when you attempted to stop the males?
>
> A. We basically, because they fit the description of the males for the robbery, we would stop the males for investigation—
>
> Q. Officer, let me stop you there: The defendant we're talking about, was

---

9. This Court in *Commonwealth v. Gray,* 784 A.2d 137 (Pa.Super.2001), questioned the continued validity of *Davis.* Our opinion in *Gray* addressed the level of corroboration necessary to derive reasonable suspicion from an informant's report of a man with a gun. We observe that *Gray* arose in Luzerne County, where § 6108 is not applicable. We further observe that *Gray* predated the Pennsylvania Supreme Court's opinion in *D.M. II* and instead relied on the prior Pennsylvania Supreme Court opinion that was vacated by the United States Supreme Court. *Gray* does not preclude our reliance in the instant matter on *Davis.*

10. The law allows this Court to affirm an order on a rationale that differs from that of the trial court. *Commonwealth v. Kemp,* 961 A.2d 1247, 1254 n. 3 (Pa.Super.2008) ("[I]t is established that we can affirm the trial court on any valid basis.").

he the defendant? Did it turn out that [he] had committed that robbery?

A. No.

N.T., 1/10/08, at 36 (emphasis added). Thus, as soon as the officer testified that Taggart fit the description of one of the robbers, the prosecutor cut him off and elicited testimony that Taggart was not one of the robbers described in the flash information. Accordingly, Taggart was not deprived of the opportunity to confront an accuser—i.e. the informant who provided the information included in the flash report—because Taggart was not implicated in the crime described by the informant. Under these circumstances, the trial court did not abuse its discretion in admitting this evidence. Taggart's second argument fails.

■ ¶ 26 For his third argument on appeal, Taggart asserts that the record does not contain sufficient evidence in support of his conviction for obliterating the serial number of a gun pursuant to 18 Pa.C.S.A. § 6117. We review this argument according to the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed. So long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, his convictions will be upheld. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Griffith*, 985 A.2d 230, 233 (Pa.Super.2009).

¶ 27 At the time of Taggart's arrest, subsection (b) of § 6117 created a presumption that a person found in possession of a gun with an obliterated serial number was the person responsible for the obliteration. Subsequent to Taggart's conviction, § 6117(b) has been deleted.[11] Taggart argues that we should analyze his sufficiency of the evidence argument under the current version of the statute.

¶ 28 We need not decide whether Taggart is entitled to the benefit of the current statute, because we conclude that the evidence in support of Taggart's conviction is insufficient even if the presumption applies. Few published decisions address § 6117. In *Commonwealth v. Mason*, 483 Pa. 409, 397 A.2d 408 (1979), the defendant, a former police officer, was arrested for selling a gun with an obliterated serial number to an undercover agent. The gun had been manufactured in the 1930's or 1940's, and the Commonwealth's expert was unable to determine when the serial numbers had been removed. *Id.* at 411–

---

**11.** The statute now provides: "No person shall change, alter, remove, or obliterate the manufacturer's number integral to the frame or receiver of any firearm which shall have the same meaning as provided in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms)". 18 Pa.C.S.A. § 6117(a). A violation is a second degree felony. 18 Pa.C.S.A. § 6117(c).

12, 397 A.2d at 410. Our Supreme Court concluded that the Commonwealth did not produce sufficient evidence in support of the defendant's conviction under § 6117:

No evidence was introduced indicating when the crime of obliteration occurred. Nor was evidence presented establishing when or the circumstances in which appellee came into possession of the firearm. The Commonwealth presented no evidence that appellee had the technical capacity to effect the crime with which he was charged. Indeed, the Commonwealth's expert witness testified that obliteration may have occurred over forty-five years ago. In these circumstances it is at least as reasonable to suppose that appellee, a law enforcement official, in the course of his official duties came upon and acquired the weapon in an already altered condition as it is to conclude appellee obliterated the serial numbers after he came into possession. As the trial court observed, 'to apply subsection (b) of § 6117 under the facts of this case would be to allow an arbitrary and tenuous inference be drawn without indicia of validity in logic or reason or experience.'

*Id.* at 414, 397 A.2d at 411. The Supreme Court construed § 6117(b) as creating a "permissible inference." *Id.* at 413, 397 A.2d at 411. In order to establish a defendant's guilt beyond a reasonable doubt, there must be a strong likelihood that "presumed facts flow from established facts." *Id.* at 414, 397 A.2d at 411.

¶ 29 Subsequent to *Mason*, this Court concluded that the defendant's possession of a gun plus his attempt to discard the gun when he noticed police approaching was sufficient evidence of the defendant's guilty knowledge of the obliterated serial number. *Commonwealth v. Ricketts,* 297 Pa.Super. 467, 444 A.2d 127 (1982). In *Ricketts*, we relied on *Commonwealth v. Shore*, 259 Pa.Super. 404, 393 A.2d 889 (1978), a very similar case, pre-dating *Mason*, in which this Court concluded that possession of a gun plus an attempt to discard it upon sight of the police was sufficient to uphold a conviction under § 6117.

¶ 30 Our Supreme Court reversed this Court's *Ricketts* opinion in a one-sentence *per curiam* order citing to *Mason*. *Commonwealth. v. Ricketts*, 502 Pa. 623, 467 A.2d 1132 (1983). Justice McDermott published a dissent to the *per curiam* order, reasoning that the defendant's conviction should have been upheld: "I would hold that the statutory inference, along with the appellant's effort to get rid of the weapon, was sufficient evidence to support a finding of guilt." *Id.* at 625, 467 A.2d at 1133.[12]

¶ 31 The Commonwealth's argument in the instant matter is precisely the same as the rationale this Court adopted in *Ricketts*. The Commonwealth argues that Taggart's possession of the gun, combined with his attempt to dispose of it after his flight, is sufficient evidence of his guilt under § 6117. Though our Supreme Court majority did not publish an opinion in *Ricketts*, the *per curiam* order makes clear that it believed this Court's rationale in *Ricketts* did not pass muster under *Mason*.[13]

---

**12.** Our research has revealed no recent case law on § 6117. In *Commonwealth v. Imes*, 573 Pa. 33, 820 A.2d 701 (2003), the Supreme Court reversed an order of this Court in a *per curiam* order, citing *Mason*. The application of § 6117 was the only issue in *Mason*. In a subsequent federal *habeas corpus* proceeding, the District Court noted that the *per curiam* order in *Imes* reversed the defendant's conviction under § 6117. *Imes v. Patrick*, 2005 WL 1563351 (E.D.Pa.2005) (unpublished memorandum).

**13.** We are cognizant that an unexplained *per curiam* order does not establish binding precedent. *See Commonwealth v. Smith*, 575 Pa.

¶ 32 We must therefore determine whether the facts of Taggart's case meet the criteria set forth in *Mason*. In *Mason*, as quoted above, the Supreme Court reasoned that the evidence of the defendant's violation of § 6117 was insufficient for at least three reasons: (1) the record contained no evidence of when the serial number obliteration occurred; (2) the record contained no evidence of when the defendant came into possession of the gun; and (3) the record contained no evidence that the defendant had the technical capacity to perform the obliteration. *Mason*, 483 Pa. at 414, 397 A.2d at 411. Two of those deficiencies are present in the instant case. The record establishes that the serial number was obliterated, but not when or by whom. *See* N.T., 1/10/08, at 64–66.[14] Likewise, there is no indication in the record as to when Taggart came into possession of the gun.

¶ 33 As was the case in *Ricketts* and *Shore*, the Commonwealth has demonstrated only that Taggart possessed the gun and that he attempted to discard it after fleeing the police. We observe that, unlike Taggart, the defendants in *Ricketts* and *Shore* did not flee prior to discarding their guns. Nonetheless, the Supreme Court's analysis in *Mason* makes clear that facts evincing consciousness of guilt are insufficient to establish that the defendant obliterated the serial number. This was so even though the § 6117(b) presumption existed when *Mason* was decided. In light of the foregoing analysis, we will vacate the portion of the judgment of sentence pertaining to § 6117.

¶ 34 For his final argument on appeal, Taggart asserts that his convictions for persons not to carry firearms, 18 Pa. C.S.A. § 6105, and carrying a firearm without a license, 18 Pa.C.S.A. § 6106, merge for sentencing purpose. Merger is governed by statute in Pennsylvania:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. In *Commonwealth v. Baldwin*, —— Pa. ——, ——, 985 A.2d 830, 831 (2009), a majority of our Supreme Court held that "a plain reading of § 9765 reveals the General Assembly's intent that crimes with different statutory elements be punished separately." [15]

¶ 35 In *Commonwealth v. Williams*, 920 A.2d 887 (Pa.Super.2007), this Court considered whether offenses under § 6105 and § 6106 merge for sentencing purposes. We concluded that offenses under § 6105 and § 6106 did not merge because each offense contains an element that the other does not. Section 6105 requires proof that the defendant has committed one of the enumerated offenses precluding him from carrying a firearm. Section 6106 requires proof that the defendant does not have a license. *Id.* at 891.

---

203, 222–23, 836 A.2d 5, 17 (2003). Given that *Ricketts* was a factually simple case and involved only one legal issue—the sufficiency of the evidence under § 6117—we believe that the Supreme Court's *per curiam* reversal pursuant to *Mason* is strong persuasive authority that possession of a gun plus an attempt to discard it is not sufficient for a conviction under § 6117.

14. There is no specific testimony that Taggart had the technical facility to obliterate the serial number, but the record reveals that the serial number was simply sanded or chiseled away. N.T., 1/10/08, at 64–66.

15. The Supreme Court's opinion in *Baldwin* came down subsequent to the parties' submission of briefs in this case.

¶ 36 In reaching our conclusion in *Williams,* we relied on the dissenting opinion in *Commonwealth v. Jones,* 590 Pa. 356, 912 A.2d 815 (2006). In that case, the merger analyses in the lead opinion and dissenting opinion each garnered the support of three justices. The dissenting opinion in *Jones,* and this Court's adherence to it in *Williams,* has been vindicated by the Supreme Court's majority opinion in *Baldwin.* Taggart provides a thorough and scholarly analysis in support of his argument that the *Jones* Court's lead opinion should govern merger analysis, but our Supreme Court has now rejected that argument.[16] Taggart's merger argument does not warrant relief.

¶ 37 In summary, we have concluded that the trial court did not err in declining to suppress the gun. Likewise the trial court did not abuse its discretion in admitting into evidence the information police received over the radio flash report. The record does not contain sufficient evidence in support of Taggart's conviction under § 6117. Finally, Taggart's convictions under § 6105 and § 6106 do not merge for sentencing purposes. Accordingly, we vacate the judgment of sentence imposed for Taggart's conviction under § 6117 and affirm the remainder of the judgment of sentence. Since this result alters the trial court's sentencing scheme, we will remand for re-sentencing, if necessary.

¶ 38 Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

---

16. Even without the result in *Baldwin,* this Court's *Williams* opinion would have controlled the outcome here, as one three-judge panel of this Court cannot overrule another. *Commonwealth v. Taylor,* 437 Pa.Super. 102, 649 A.2d 453, 455 (1994).