J-S46002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAKEEM DAVIS | : | |
| | : | |
| Appellant | : | No. 3398 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006941-2018

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED DECEMBER 23, 2020**

Appellant, Hakeem Davis,[1] appeals from the judgment of sentence of life imprisonment, following his conviction for first-degree murder and related offenses.　Herein, Appellant challenges the trial court's order denying suppression of the physical evidence he abandoned while being pursued by police in a foot chase.　Specifically, he alleges that the trial court's factual findings—regarding the identifying information known to the arresting officer at the time Appellant was effectively seized when police ordered him to stop— are not supported by the record, and that the police did not possess reasonable suspicion to stop him.　After careful review, we affirm.

---

[1] We observe that, throughout the record, Appellant's first name is alternately spelled 'Hakeem' and 'Hykeem.'  Appellant even captioned his notice of appeal with 'Hakeem,' yet he captioned his appellate brief with 'Hykeem.'  We adopt the former spelling merely for the sake of consistency herein.

On August 14, 2018, Philadelphia Police Officer Brittany Kelly and her partner received a radio call for a shooting reported on North Orianna Street in Philadelphia. Trial Court Opinion (TCO), 2/10/20, at 2. When Officer Kelly arrived at that location, she discovered an unconscious male lying on the ground in a pool of blood. *Id.* The victim, Matthew Wallace, had been shot five or six times, causing wounds to his chin, neck, shoulder, chest, elbow, and leg. *Id.* at 5. The victim ultimately died from his injuries. *Id.*

While securing the crime scene, Officer Kelly found a security video from a local deli and immediately viewed it. *Id.* at 2. The video showed an individual approach and shoot the victim with a firearm wielded in his right hand. *Id.* at 3. With his left hand, the shooter was holding what appeared to be a cellphone to his ear immediately before and after he fired the shot. *Id.*

Based on her observation, Officer Kelly relayed a description of the shooter over the police radio ("flash description").[2] *Id.* at 2. Officer Jonathan Devine heard the flash description, and observed Appellant near a mass transit stop, about eight blocks from the crime scene. *Id.* at 2-3. Officer Devine believed Appellant matched the flash description, approached him, and asked if he could talk for a minute. *Id.* at 3. At that point, Appellant ran away, and Officer Devine pursued him. *Id.* During the chase, the officer observed Appellant lose his baseball cap and throw a backpack over a fence before he was ultimately apprehended. *Id.* Officer Devine recovered both items, and

---

[2] This flash description is the subject of Appellant's suppression claim, which we discuss in greater detail *infra*.

discovered a handgun and a red article of clothing in the backpack. *Id.* A search of Appellant revealed a cellphone. *Id.*

During their investigation, police extracted data from Appellant's cellphone, revealing that it had been in use at the time of the murder. *Id.* Investigators found seven fired cartridge casings from the murder scene. *Id.* at 4. The firearm recovered from Appellant's discarded backpack had two unfired rounds (one of which had misfired), and a maximum capacity of nine rounds. *Id.* An expert testified that the seven rounds had been fired from the recovered firearm. *Id.* at 5. Appellant's pants, and both red shirts discovered in the backpack, tested positive for gunshot residue. *Id.* at 4. DNA evidence on the firearm was inconclusive, but Appellant was one of three contributors to the DNA found on the red shirt in the backpack. *Id.* at 4-5. Finally, it was determined that Appellant did not possess a license to carry a firearm in Pennsylvania. *Id.* at 5.

The Commonwealth charged Appellant with first-degree murder,[3] two violations of the Uniform Firearms Act,[4] and possession of an instrument of crime.[5] Appellant litigated a timely-filed suppression motion at a hearing held on September 16, 2019, at which Officers Devine and Kelly testified. The court denied Appellant's suppression motion the following day when

---

[3] 18 Pa.C.S. § 2502(a).

[4] 18 Pa.C.S. §§ 6106 (firearms not to be carried without a license), 6108 (carrying firearms on public streets or public property in Philadelphia).

[5] 18 Pa.C.S. § 907.

Appellant's jury trial commenced. On September 19, 2019, the jury convicted Appellant on all counts, and the trial court sentenced him to life imprisonment without the possibility of parole for first-degree murder, and to no further penalty at the remaining counts. Appellant filed a timely post-sentence motion, which the court denied on October 30, 2019. He filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement.

Appellant now presents a single question for our review: "Does the evidence the Commonwealth presented at the suppression hearing support the trial court's findings of fact and conclusions of law?" Appellant's Brief at 4 (unnecessary capitalization omitted).

Specifically, Appellant contends:

The testimony of Police Officer Kelly and Police Officer Devine regarding the description of the alleged shooter undeniably indicates that Police Officer Devine was unaware of the full scope of Police Officer Kelly's description of the alleged shooter when he attempted to stop [Appellant]. Police Officer Devine's testimony is vague and unclear as to what he knew about the alleged shooter when he attempted to stop [Appellant]. The trial court's factual finding that Police Officer Devine was acting on the description of a black male, dark hat, red or orange shirt, white undershirt, dark pants, [and] backpack is simply not supported by the record. Nor was the officer simply making an investigatory stop of [Appellant].

*Id.* at 14.

It is well established that,

[o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

- 4 -

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. McAdoo**, 46 A.3d 781, 783–84 (Pa. Super. 2012) (cleaned up). As implied by **McAdoo**, Appellant's burden is heavy, as we must defer to the suppression court's factual findings, which necessarily include its credibility determinations, unless there is no support in the record from the suppression court. **See Commonwealth v. Marshall**, 568 A.2d 590, 595 (Pa. 1989) ("When faced with … a conflict of testimony, we defer to the suppression court, which, as fact finder, passes upon the credibility of witnesses, and its findings are not disturbed when supported by the record.").

First, we must address whether Appellant adequately preserved his claim for our review. The Commonwealth contends that:

Initially, [Appellant] waived the claim he now attempts to raise on appeal, as it is different from the claim in his statement of matters complained of on appeal. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); [**see also**] **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). In his statement, he claimed that the trial court erred in denying his suppression motion because Officer Devine's testimony was allegedly shown to be untrue. He cites his argument at the suppression hearing where he highlighted an alleged discrepancy between Officer Devine's testimony at that hearing and the officer's written report. That supposed "discrepancy" was that Officer Devine testified that he saw a red piece of clothing hanging

out of [Appellant]'s backpack, but that his written report said that he found a red shirt inside the backpack. N.T.[,] 09/17/2019, [at] 3.

[Appellant] on appeal, however, changes his argument. He now complains that the police lacked reasonable suspicion to stop him based solely on the description of the shooter, and that the trial court's finding of fact that there were two radio broadcasts of the shooter's description was unsupported by the record. When the trial court has to guess what issues [Appellant] is appealing, it cannot conduct meaningful review. **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001). Lack of a trial court opinion on the appealed issue poses a substantial impediment to meaningful and effective review. **Lord**, 719 A.2d at 308. Indeed, here, the trial court had no opportunity in its opinion to address the actual argument that [Appellant] now presents on appeal. [TCO at] 10–12. This hinders meaningful appellate review, and [Appellant]'s claim should be rejected for this reason alone.

Commonwealth's Brief at 8-9.

We are compelled to agree with the Commonwealth. First, we note that the trial court advised Appellant in its Rule 1925(b) concise statement order that any claims not raised in his Rule 1925(b) statement would be waived for appellate review. **See** Concise Statement Order, 12/9/19, at 1 (single page). In his Rule 1925(b) statement, Appellant argued that Officer Devine's testimony at the suppression hearing was "incredible" because it was "substantially different" from his prior testimony at the preliminary hearing and his subsequent testimony at trial. Rule 1925(b) Statement, 12/30/19, at 2 ¶ 3 (unnumbered pages). In its Rule 1925(a) opinion, the trial court stated that it did not consider Officer Devine's preliminary hearing testimony in

determining the witness's credibility, because the defense never used the prior testimony to impeach that witness at the suppression hearing.[6]  TCO at 10.

In his brief, Appellant now assails the suppression court's assessment of both Officers Devine and Kelly's credibility based on inconsistencies between and within their respective testimonies *at the suppression hearing* regarding the flash description given to Officer Devine by Officer Kelly.  *See* Appellant's Brief at 9-13.   Appellant essentially argues that these inconsistencies undermine the suppression court's determination that Officer Devine received a single flash information.  *Id.* at 17.   Appellant further maintains that the record instead reveals that the details contained in the flash description were effectively broadcast in installments, and that it is unclear how many of those details were known to Officer Devine at the time he approached Appellant.  *Id.*  He then argues that what was known to Officer Devine did not support that he had reasonable suspicion to believe Appellant was engaged in criminal activity.  *Id.*

None of these theories were stated, or even fairly suggested, by Appellant's Rule 1925(b) statement.  The trial court's opinion did not address

---

[6] In its Rule 1925(a) opinion, the trial court did not address the assertion that Officer Devine's testimony differed from his subsequent trial testimony. Nevertheless, in *In re L.J.*, 79 A.3d 1073 (Pa. 2013), our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing, and does not include the record of the subsequent trial absent extraordinary circumstances.  *Id.* at 1087.  Thus, it would be outside our scope of review to reject the suppression court's factual findings based on Officer Devine's inconsistent testimony at trial.

these theories, thereby hindering our review of Appellant's claim. Accordingly, we conclude that Appellant's claim, insofar as he argues that the record does not support the suppression court's factual findings, is waived.

However, Appellant has consistently maintained that the facts known to Officer Devine at the time Appellant was effectively seized were not sufficient to support reasonable suspicion to stop him, an argument that was addressed by the lower court in its opinion. Although Appellant has waived his challenge to the suppression court's factual findings, we will address the legal prong of that argument, while accepting the factual findings of the court as they are, out of an abundance of caution.

> This Court has addressed the right to be free from unreasonable search and seizure, pursuant to the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution, as follows:
>
>> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop.
>>
>> Our [S]upreme [C]ourt has interpreted Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Stated another way, when one is unconstitutionally seized by the police, *i.e.*[,] without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.

> In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.
>
> *In re M.D.*, 781 A.2d 192, 197 (Pa. Super. 2001) (internal citations and quotation marks omitted). Flight by the suspect can be considered suspicious activity, but flight alone does not give rise to reasonable suspicion. *Id.*

*Commonwealth v. Taggart*, 997 A.2d 1189, 1193 (Pa. Super. 2010).

Here, the trial court determined that the flash description relayed to Officer Devine described a "black male, dark cap with white writing, red shirt, white undershirt, dark pants, and a dark book bag." TCO at 12 (citing N.T., 9/16/19, at 157-70). Officer Devine searched in the vicinity of the shooting for a person matching that description. *Id.* About ten blocks away from the shooting, the officer saw Appellant at a transit stop. *Id.* Officer Devine observed that Appellant was wearing a "dark hat, [a] white shirt, dark colored sweat pants, a dark backpack[,] and an article of red clothing" protruded from his backpack. *Id.* When Officer Devine asked Appellant to talk, Appellant "took off running." *Id.* Thus, Appellant was effectively seized when he took flight. Appellant submits that Officer Devine did not possess reasonable suspicion of Appellant's involvement in criminal activity at that moment, based

primarily on the ostensible weakness of the identifying information from the

flash description.[7]

The Commonwealth responds as follows:

Here, police had a particularized and objective basis for suspecting that [Appellant] was the suspected shooter. The trial court found that Officer Kelly had sent out two flash reports describing the shooter whom she saw on the surveillance footage: black man, dark-colored hat with white writing, dark-colored pants, a red or orange shirt, white undershirt, and a dark-colored backpack. The trial court found that Officer Devine was searching for the shooter in the area of the shooting, and decided to go to the nearest [mass transit] station, thinking the shooter may try to flee the neighborhood. There, he saw a black man with a dark-colored hat, a white shirt, a dark backpack, black sweatpants, and an article of red clothing coming out of the backpack. When Officer Devine approached [Appellant], [Appellant] fled, and Officer Devine pursued.

This Court has found that police had reasonable suspicion in similar cases. In **Commonwealth v. Walls**, 53 A.3d 889 (Pa. Super. 2012), this Court found reasonable suspicion to stop Walls because (1) he was found a half-block away from the called in location, (2) he matched the description of a black man wearing a black coat and black jeans, and (3) he fled before the officer could speak to him. **Walls**, 53 A.3d at 894. While [Appellant] here was found several blocks from the crime scene, he was spotted at a

_____

[7] While presenting Appellant's legal argument before the suppression court, defense counsel elaborated on the perceived weakness of the description, stating:

[T]he description is fairly light. There is no facial hair description. There is no height, weight, anything of that nature. It is simple clothing and you are talking about a person in our society in August who is wearing a pair of sweatpants and a T-shirt. There is going to be many, many people out with white T-shirt, red T-shirt, orange T-shirt, sweatpants [at] 11:00 [a.m.] that would fit this description.

N.T., 9/17/19, at 4.

commuter train station, which the officer logically had deduced could be fertile ground to canvass because it could provide the shooter a chance to escape the area quickly. Further, Officer Devine had a more particularized and objective basis for believing that [Appellant] was engaged in criminal activity than did the officers did in ***Walls***, since [Appellant] matched a more specific description of the offender.

Commonwealth's Brief at 10-11.

We agree with the Commonwealth's analysis that Officer Devine had at least as particular and objective of a basis to stop Appellant as possessed by the police officer in ***Walls***. Although Officer Devine found Appellant further away from the crime scene than Walls, the description of Appellant's clothing was far more detailed. Moreover, Appellant was not so far away from the crime scene that it was unreasonable to believe he could have traversed that distance in the time between the shooting and when Officer Devine first observed him. In sum: 1) Appellant matched the race of the flash description; 2) Appellant was wearing several items of clothing of identical or similar colors to the flash description; and 3) Appellant was observed about eight blocks away from the shooting a short time after it occurred. Based on the totality of these circumstances, we agree with the lower court that Officer Devine possessed reasonable suspicion to believe Appellant was the shooter. Accordingly, the legal prong of Appellant's suppression claim lacks merit.

In conclusion, we conclude that Appellant waived his challenge(s) to the suppression court's factual findings. Further, we ascertain no legal error in the court's determination that Officer Devine possessed reasonable suspicion to stop Appellant at the moment Appellant took flight. As such, the lower

court did not err in denying Appellant's motion seeking to suppress evidence discovered on Appellant's person and in the abandoned backpack.

Judgment of sentence **affirmed**.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/23/2020*