781 A.2d 192 (2001)
In the Interest of: M.D., (Juvenile).
Appeal of: M.D., (Juvenile).
Superior Court of Pennsylvania.
Submitted April 23, 2001.
Filed July 30, 2001.
*194 John Packel, Public Defender, Philadelphia, for appellant.
Catherine L. Marshall, Asst. District Atty., Philadelphia, for Com., appellee.
Before: ORIE MELVIN, LALLY-GREEN and POPOVICH, JJ.
POPOVICH, J.
¶ 1 This is an appeal from the adjudication of delinquency and commitment entered in the Court of Common Pleas of Philadelphia County on August 9, 2000. Appellant's adjudication of delinquency was based upon his conviction for possession of a controlled substance. Upon review, we reverse and remand for a new trial.
¶ 2 Herein, appellant raises two issues for our consideration. First, appellant questions: "Where there was no evidence introduced concerning the appellant's description, did the lower court err when it denied a motion to suppress physical evidence because, inter alia, the appellant `matched' a description broadcast over police radio?" Appellant's Brief, p. 3. Second, appellant asks: "Even if the appellant had `matched' in every detail a description provided anonymously and broadcast over police radio, was the lower court wrong when it ruled that the description, coupled with appellant's flight, provided the police *195 with a `reasonable suspicion' to chase the appellant, and was the court also wrong when it refused to suppress contraband discarded during the chase?" Appellant's Brief, p. 3.
¶ 3 Our standard of review for the denial of a suppression motion is
whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
Commonwealth v. Korenkiewicz, 743 A.2d 958, 962 (Pa.Super.1999) (en banc), appeal denied, 563 Pa. 659, 759 A.2d 383 (Pa.2000) (quoting Commonwealth v. Hawkins, 549 Pa. 352, 701 A.2d 492, 504-05 (Pa.1997)); Commonwealth v. Hayward, 756 A.2d 23, 26 (Pa.Super.2000).
¶ 4 The trial court set forth the facts adduced at the suppression hearing as follows:
The facts established, Philadelphia Police Officer Joseph Rapone was on patrol in the area of 6th and Butler Streets at approximately 6:35 p.m. on April 6, 2000. The officer was patrolling the area looking for a robbery suspect. He observed appellant, who matched the description of the suspect.3 The officer asked appellant to "come here." The officer testified he wanted to ask appellant his name. At that point, appellant ran. The officer briefly followed him in his police car. Appellant reversed his direction and continued running. The officer got out of his car and chased appellant on foot. When the officer came just a few feet behind appellant, he observed appellant spitting objects out of his mouth. Appellant was apprehended and the seven packets of crack cocaine which appellant spit from his mouth were recovered.
3 Upon review of the Notes of Testimony, the Court notes the officer described the clothing of the suspect for whom he was searching. The notes fail to reflect how appellant was dressed. However, in argument on the Motion to Suppress, both appellant's attorney and the District Attorney acknowledged appellant fit the description of the robber. The District Attorney stated. "Your Honor, the Commonwealth would contend the officer responded to a radio call for a robbery." N.T. 8/9/00 at 12. Appellant's attorney stated, "[The officer] had a description, I believe my client partially fit the description." N.T. 8/9/00 at 8.
Trial Court Opinion, pp. 1-2.
¶ 5 Initially, we agree with appellant that the record does not support the trial court's conclusion that appellant "matched" the description of the robbery suspect. As admitted by the trial court, the Commonwealth did not offer any evidence of appellant's appearance at the time of the seizure. Officer Joseph Rapone testified that he was responding to a radio call to search for a robbery suspect wearing a "gray hoody and blue jeans." He never described appellant's clothing. While the Commonwealth argued that appellant "matched" the description of the robbery suspect, defense counsel merely stated, "I believe my client partially fit the description." Since the record does not support the trial court's conclusion that appellant matched the description of the robbery suspect, we are not bound by the court's finding of fact relative to appellant's appearance. Rather, the record permits only the conclusion that appellant "partially fit the description" of the robbery *196 suspect as admitted by appellant's counsel.[1]
¶ 6 Appellant argues that Officer Rapone improperly chased him and that the pursuit constituted an illegal seizure. Appellant then argues that the crack cocaine which he discarded during the chase should have been suppressed as the product of an illegal seizure.
¶ 7 In Commonwealth v. Lynch, 773 A.2d 1240, 2001 PA Super 85 (Pa.Super.2001), we restated the law applicable to this case:
Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276, 280 (Pa.1969).
Our supreme court has interpreted Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. Compare California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), with Commonwealth v. Matos, 543 Pa. 449, 672 A.2d 769, 776 (Pa.1996). Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Matos, 672 A.2d at 770. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Id. at 771. Stated another way, when one "is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual." Commonwealth v. Wimbush, 561 Pa. 368, 750 A.2d 807, 810 n. 5 (Pa.2000).
In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment. Commonwealth v. McClease, 750 A.2d 320, 324 (Pa.Super.2000). See also Commonwealth v. Jackson, 548 Pa. 484, 698 A.2d 571, 573 (Pa.1997) (stating that "Pennsylvania has always followed Terry in stop and frisk cases").
The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] `warrant a man of reasonable caution in the belief' that the action taken was appropriate." This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.
Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153, 1156 (Pa.2000) (quoting *197 Terry, 392 U.S. at 21-22 [88 S.Ct. 1868]) (citations omitted).
Among the factors to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. Commonwealth v. Freeman, 563 Pa. 82, 757 A.2d 903, 908 (Pa.2000) (noting that "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"); Zhahir, 751 A.2d at 1157 (stating that the expectation of criminal activity in a given area and nervous or evasive behavior are factors); Commonwealth v. Albert, [767 A.2d 549 (Pa.Super.2001) ] (pointing to the reliability of an informant's tip as well as time and place as factors in determining reasonable suspicion); Commonwealth v. Pizarro, 723 A.2d 675, 680 (Pa.Super.1998) (finding that flight and presence in heavy drugtrafficking areas are factors).
While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. Wimbush, 750 A.2d at 811; Jackson, 698 A.2d at 572. Such anonymous tips must be treated with particular suspicion. Jackson, 698 A.2d at 573. Likewise, presence in a high crime area alone or flight alone does not form the basis for reasonable suspicion. Commonwealth v. Cook, 558 Pa. 50, 735 A.2d 673, 677 (Pa.1999). However, a combination of these factors may be sufficient. See Zhahir, 751 A.2d at 1157 (noting that suspicious conduct corroborates an anonymous tip); Cook, 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable suspicion); Commonwealth v. Cottman, 764 A.2d 595 (Pa.Super.2000) (finding that the officer's experience, appellant's presence in a high crime area, furtive movements, and flight established reasonable suspicion); Pizarro, 723 A.2d at 680 (finding that flight along with presence in heavy drug-trafficking area may demonstrate reasonable suspicion).
Lynch, 773 A.2d 1240, 2001 PA Super 85, ¶¶ 7-11; see also Albert, 767 A.2d at 552.
¶ 8 As our Supreme Court stated in Cook, 735 A.2d at 677:
Case law has established that certain facts, taken alone, do not establish reasonable suspicion. Commonwealth v. Matos, 543 Pa. 449, 672 A.2d 769 (Pa. 1996)(flight alone does not constitute reasonable suspicion); Commonwealth v. DeWitt, 530 Pa. 299, 608 A.2d 1030 (Pa.1992)(flight alone does not constitute reasonable suspicion); Commonwealth v. Kearney, 411 Pa.Super. 274, 601 A.2d 346 (Pa.Super.1992)(mere presence in a high crime area does not warrant a stop). However, a combination of these facts may establish reasonable suspicion. Terry v. Ohio, 392 U.S. at 22, 88 S.Ct. 1868 (innocent facts, when taken together, may warrant further investigation); Commonwealth v. Riley, 715 A.2d 1131, 1135 (Pa.Super.1998)("a combination of circumstances, none of which alone would justify a stop, may be sufficient to achieve a reasonable suspicion").
¶ 9 Presently, is it undisputed that appellant was seized once the officer gave chase in his vehicle and on foot. Thus, we must determine whether Officer Rapone had reasonable suspicion that appellant was involved in criminal activity at the time of the seizure. If Officer Rapone did not have reasonable suspicion of criminal activity on the part of appellant, then the contraband discarded by appellant during the chase "are the fruits of an illegal `seizure' "and subject to suppression. Matos, 543 Pa. at 451, 672 A.2d at 770; Albert, 767 A.2d at 552.
¶ 10 Upon review of the facts, we conclude that the lower court's legal conclusion *198 that Officer Rapone had reasonable suspicion to stop appellant was erroneous. The lower court stated: "This Court believes the combination of appellant matching the description of the robbery suspect combined with appellant's flight when simply called over to be asked his name gave this officer reasonable suspicion to pursue and to stop appellant." Trial Court Opinion, p. 3. To the contrary, we believe that the record is woefully lacking of the type of evidence which was necessary for the trial court to conclude that reasonable suspicion of appellant's involvement in criminal activity existed before his seizure by Officer Rapone.
¶ 11 In this case, the Commonwealth's presentation of evidence in support of its assertion of reasonable suspicion encompassed little more than two pages of testimony, and it is notable not for what evidence was proffered, but for what evidence was not. Officer Rapone merely testified that he was "in the area of 600 West Butler Street where [he] was surveying the area of a robbery suspect with a gray hoody and blue jeans" when he observed appellant and asked appellant "to come here" in order to ask him "what his name was" at which time appellant fled, and he gave pursuit. N.T., 8/9/00, p. 4. Officer Rapone never testified regarding appellant's appearance, his proximity to the robbery site, or the basis of his information regarding the robbery.
¶ 12 There is nothing in the record to suggest that appellant matched the description of the robbery suspect, except defense counsel's admission that appellant "partially fit the description." Moreover, Officer Rapone's description of the robbery suspect, i.e. "a robbery suspect in a gray hoody and blue jeans," was too general and was of little use to distinguish appellant's appearance. Clearly, blue jeans and a gray hooded sweatshirt is not unusual attire, and the officer did not even indicate whether his suspect possessed any specific physical or racial characteristics which would assist in separating possible suspects from ordinary, law-abiding citizens. Neither did Officer Rapone cite any personal observation of appellant, other than his flight, which would indicate criminal activity.[2] Appellant was simply walking down West Butler Street at 6:45 p.m., when Officer Rapone saw him.
¶ 13 Of course, the Commonwealth argues that appellant's flight in combination with his "matching" the description of the robbery suspect is sufficient to create reasonable suspicion that appellant was involved in criminal activity. In making this argument, the Commonwealth relies upon the United States Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Therein, defendant Wardlow was stopped by the police after the police noticed him flee when the officers converged upon an area known for heavy narcotics trafficking. The Supreme Court found that the officer's had reasonable suspicion to stop Wardlow, given his unprovoked flight from a high crime area. In so ruling, the Supreme Court stated:
Nolan and Harvey were among eight officers in a four car caravan that was converging on an area known for heavy narcotics trafficking, and the officers anticipated encountering a large number of people in the area, including drug customers *199 and individuals serving as lookouts. App. 8. It was in this context that Officer Nolan decided to investigate Wardlow after observing him flee. An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144 and 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam); United States v. Sokolow, supra, [490 U.S. 1] at 8-9 [109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)]. Headlong flightwherever it occursis the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. See United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.
Such a holding is entirely consistent with our decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Id., at 498, 103 S.Ct. 1319. And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.
Respondent and amici also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed *200 two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. Terry, 392 U.S. at 5-6 [88 S.Ct. 1868]. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. Terry recognized that the officers could detain the individuals to resolve the ambiguity. 392 U.S. at 30 [88 S.Ct. 1868].
In allowing such detentions, Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way. But in this case the officers found respondent in possession of a handgun, and arrested him for violation of an Illinois firearms statute. No question of the propriety of the arrest itself is before us.
Wardlow, 528 U.S. at 124-126, 120 S.Ct. at 676.
¶ 14 Were the facts as the Commonwealth asserts, i.e., appellant "matched" the description of a robbery suspect and fled without provocation when approached by the police officer, it would be certain that, pursuant to Wardlow, supra, the officer possessed reasonable suspicion when appellant ran from the officer, especially if the Commonwealth had also offered evidence regarding appellant's proximity to the scene and time of the robbery and the basis of the information supplied to the officer via the radio call. However, as previously stated, the facts are not as argued by the Commonwealth. Appellant merely "partially fit" the very generic description of the robbery suspect, and no other evidence of criminality was offered.[3] We decline to hold that flight alone is sufficient to give a police officer reasonable suspicion of criminal activity. This is the very per se rule that the United States Supreme Court also declined to endorse. Wardlow, 528 U.S. at 126-127, 120 S.Ct. at 677 (Concurring and Dissenting Opinion of Stevens, J.; joined by Souter, J., Ginsburg, J. and Breyer, J.).[4] *201 ¶ 15 In sum, we find that the Commonwealth failed to present sufficient evidence that Officer Rapone possessed reasonable suspicion to detain appellant. Rather, the lower court's legal conclusion was based upon a fact not introduced into evidence. Further, we specifically conclude that appellant's unprovoked flight in combination with his "partially fitting" a vague description of a robbery suspect did not give rise to reasonable suspicion, especially when the Commonwealth failed to present any evidence regarding appellant's proximity to the site or time of the robbery, the basis of the information supplied to the officer or any other suspicious activity on the part of appellant. Accordingly, we reverse the decision of the court below and remand for a new trial.
¶ 16 Adjudication reversed. Case remanded for proceedings in accordance with the provisions of this opinion. Jurisdiction relinquished.
NOTES
[1] The Commonwealth argues that appellant waived his claim regarding the record not supporting the trial court's determination that appellant "matched" the description of the robbery suspect. We disagree. As indicated, at the suppression hearing, defense counsel disputed the fact that appellant "matched" the description and suggested that appellant only "partially fit the description." In addition, in his Pa.R.A.P.1925 statement, appellant again claimed that the Commonwealth failed to produce sufficient evidence to establish Officer Rapone had reasonable suspicion that appellant was engaged in criminal activity. Accordingly, we are convinced that appellant has not waived this claim.
[2] By this comment, we do not imply that flight from a police officer, in and of itself, is evidence of criminal conduct, as such conduct could have entirely lawful explanation. Rather, we note that appellant's flight was but one of many legitimate factors which Officer Rapone could have used to assess whether reasonable suspicion of criminal activity was present.
[3] We note that in the case, the Commonwealth has argued that we should assume that appellant "matched" the description of the robbery suspect since "all parties agreed on a fact [(appellant "matched" the description)] that was inadvertently omitted from the record." Commonwealth Brief, p. 6. Nothing could be further from the truth, as even a cursory reading of the transcript of the suppression hearing indicates. Although it may be true that the Commonwealth inadvertently failed to introduce evidence that appellant "matched" the description, it nevertheless bears the burden of that failure, not appellant. In addition, we note that the Commonwealth's reasonable-suspicion argument repeatedly refers to facts clearly not of record, such as appellant matching the description of the robbery suspect and appellant being found where Officer Rapone was told to look for the robbery suspect. In fact, Officer Rapone never testified regarding appellant's appearance, the location of the robbery or appellant's location in relation thereto.
[4] Appellant also argues that In re D.M., 560 Pa. 166, 743 A.2d 422 (1999), (vacated and remanded sub nom.), Pennsylvania v. D.M., 529 U.S. 1126, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000), provides a basis for reversing the lower court's decision based upon state constitutional grounds. In that case, Officer Chris Frazier received a radio call regarding a man with a gun at 28th and Cecil B. Moore Avenues in Philadelphia. The officer was only one block away from that location at the time of the call. The radio call included a description of the "man with a gun" as a black male, wearing a white t-shirt, blue jeans and white sneakers. Upon arriving at the scene, Officer Frazier saw D.M., who matched the description given over the radio, and approached D.M., asking him to come over. D.M. then fled and was apprehended by the police, who found a handgun in D.M.'s pants. D.M. was then arrested. Our Supreme Court stated:

In the instant case, the officer's suspicions were not aroused at the time he initially approached appellant. As indicated previously, the tip and existing circumstances when Officer Frazier arrived at the scene failed to provide any facts that would lead an officer to reasonably suspect that criminal activity was afoot. In the absence of any factors indicating that the officer suspected criminal activity was afoot, the "additional" factor of flight is not relevant to the determination of reasonable suspicion.
In re D.M., 743 A.2d at 426.
We decline to employ In re D.M., supra, as a basis for reaching our decision today for several reasons.
First, it is entirely unclear that the decision in In re D.M., supra, was based upon separate state constitutional grounds since our Supreme Court in that case specifically indicated that determination of whether reasonable suspicion exists for a Terry stop is the same under Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution.
Second, In re D.M., supra, has been vacated and remanded by the United States Supreme Court for reconsideration by our Supreme Court in light of Wardlow, supra, and we decline to predict whether our Supreme Court will alter the reasonable suspicion analysis under our state constitution.
Third, even if upon reconsideration in light of Wardlow, supra, our Supreme Court does conclude that there were sufficient facts to give rise to reasonable suspicion that D.M. was engaged in criminal activity under both the federal and state constitutions, the facts of the present case would be sufficiently distinguishable to justify our holding today. It is clear that the description of the suspect in D.M. was more detailed, the precise location of the suspect was given, the officer arrived at that location proximate in time to the tip and D.M. matched the description and was found at the predicted location. In the present case, it is clear that there was considerably less evidence to suggest criminal activity on the part of the defendant, than there was in In re D.M., supra.
We also note that the Commonwealth argues that appellant waived this argument based upon our state constitution by failing to raise it specifically in the court below. However, since we have determined that reasonable suspicion was lacking under the federal constitution, we need not reach the question of whether appellant's state-constitution-based claim was waived.