J-A33018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ALVAREZ DEMPSIS | |
| Appellee | No. 3452 EDA 2014 |

Appeal from the Order entered November 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003785-2010

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.: **FILED April 27, 2016**

Appellant, the Commonwealth, appeals from the order the Court of Common Pleas of Philadelphia County entered on November 10, 2014, granting Appellee Alvarez Dempsis' motion to suppress the evidence seized following Appellee's arrest. The trial court found the officers did not have reasonable suspicion to stop Appellee. In reaching this conclusion, the trial court noted that the officers stopped Appellee based on "nebulous" information provided by an "unnamed source," with a "low indicia of reliability," and "very little police corroboration." The record does not support the trial court's characterization of the evidence or its legal conclusions. Accordingly, we reverse.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The relevant factual and procedural background of the instant matter can be summarized as follows. On November 11, 2009, Officer Russell Wesley Simmons, a 17-year police veteran, was conducting a narcotics investigation near the 6400 block of Palmetto Street, in the northeast section of Philadelphia, based on information provided by a confidential source of another officer, Officer Barber. The confidential source told Officer Barber that he had a telephone number for a "Hispanic male" who could provide a large quantity of heroin. The confidential source indicated that the Hispanic male operated a 1997 dark-colored, two-door Acura, and delivered drugs in the area of northeast Philadelphia. Later that day, around 11 p.m., the confidential source called the Hispanic male to make arrangements for the delivery of a large quantity of heroin. Specifically, the confidential source and the "Hispanic man" agreed that they would meet at Levick and Rising Sun Avenue—located in the area of 6400 block of Palmetto Street[1]—shortly after the phone call to complete the sale. The phone call took place in the presence of Officer Simmons, who could also hear the conversation as it was on speaker.

Around 1 a.m. on November 12, 2009, Officer Simmons set up a surveillance team in the area where the delivery was to take place. During the surveillance, the confidential source received a phone call from the

---

[1] The officers described the area as "slightly residential and more business area." N.T. Hearing, 10/20/2014, at 18.

Hispanic male, who was calling from the same number the confidential source had called earlier that night. Based on the information, the surveillance team was on the lookout for a Hispanic male in the area of Levick and Rising Sun Avenue. Officer Jeffrey Francis of the surveillance team saw a black, two-door Acura with three occupants parking on the 6400 block of Palmetto Street. Later he saw Appellee get out of the car and walk south while holding a cell phone by his ear. When Appellee reached the 500 block of Levick Street, he started looking back and forth, before walking westward. Another member of the surveillance team, Officer Pellum Coaxum, a 20-year police veteran, saw Appellee walking back and forth on the corner of Levick and Palmetto Streets. He had a cell phone in his hand and appeared to be engaged in a phone call. No one else was on that street. Along with other officers, Officer Coaxum approached Appellee and identified himself as a police officer. While interacting with Appellee, Officer Coaxum noted that Appellee had his right hand concealed in his jacket pocket. Officer Coaxum believed Appellee might be armed and became concerned for his safety. The officer repeatedly asked Appellee to keep his hand out of the pocket, but Appellee refused to do so. Officer Coaxum then grabbed Appellee's right forearm and attempted to remove Appellee's hand from the pocket. In doing so, Officer Coaxum felt a hard object inside Appellee's sleeve, which he believed to be a weapon. A struggle between the two ensued, and eventually they both fell on the ground where Appellee continued to fight the officer by kicking his feet and swinging at the officer

with the left arm/hand. Officer Coaxum and the other officers eventually were able to subdue Appellee. He was arrested. Incident to his arrest, he was frisked, at which point the officers found on Appellee 200 bundles of heroin, four cell phones, and $2,380 in cash.

A criminal complaint was filed charging Appellee with possession with intent to deliver a controlled substance (heroin), criminal use of communication facility, and intentional possession of a controlled substance without a license, and conspiracy. Following a preliminary hearing, only the first three charges were bound over to the trial court. Before the trial court, Appellee challenged the legality of his seizure, arguing the officers did not have reasonable suspicion or probable cause to seize him. The trial court agreed. This appeal followed.

On appeal the Commonwealth raises the following issue:

Did the lower court err in suppressing evidence on the ground that police lacked reasonable suspicion to stop [Appellee], where he arrived at the pre-arranged location for a drug deal, in the middle of the night, in a car identified by a known source, acted suspiciously at the scene, and refused to remove his hand from his pocket?

Commonwealth's Brief at 4.

In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010). At issue here is whether the officers had sufficient reasonable suspicion to warrant Appellee's seizure. In making such determination, we are guided by the following authorities:

> [P]olice officers [may] detain individuals for a brief investigation when they possess reasonable suspicion that criminal activity is afoot. Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Id.* at 476-77 (internal citations omitted).

Appellee argued, and the trial court agreed, that the quantum of information the officers had when they conducted the stop was vague, coming from an untested source, and barely corroborated by the police. According to the trial court, the information provided by the source was vague because it merely alerted the officers that the confidential source knew of a Hispanic male willing to sell a large amount of heroin in the northeast section of Philadelphia. We disagree.

When challenged by a defendant with a motion to suppress, the Commonwealth must show it conducted a legal seizure or search. In the instant matter, it had to show it had reasonable suspicion to stop Appellee.

The reasonable suspicion standard is lower than probable cause, and considerably lower than the beyond a reasonable doubt standard.[2] However, "[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24, (2000) (internal quotation marks and citation omitted). Under a reasonable suspicion standard, the Commonwealth must show that the officer conducting the stop reasonably suspected that the individual was engaging in criminal conduct.[3] The determination of whether the police officer had reasonable suspicion to stop is based on the totality of the circumstances, *see Commonwealth v. Zhahir*, 751 A.2d 1153, 1156-57 (Pa. 2000), which include tips, the reliability of the informants, time, location, and suspicious activity, including flight. *In the Interest of M.D.*, 781 A.2d 192, 197 (Pa. Super. 2001). "The totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct."

---

[2] *See*, *e.g.*, *Commonwealth v. Epps*, 608 A.2d 1095, 1096 (Pa. Super. 1994) ("It is well settled that to justify their decision to stop and briefly detain appellant, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability.").

[3] *See Commonwealth v. Rogers*, 849 A.2d 1185, 1190 (Pa. 2005) ("reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be—it requires a *suspicion* of criminal conduct that is reasonable based upon the facts of the matter") (internal citation omitted) (emphasis in original).

*Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa. Super. 2014) (citation omitted). "Even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999).   Finally, "[i]n reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists." *Wardlow*, 528 U.S. at 125.  Thus, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *In the Interest of M.D.*, 781 A.2d at 199 (quoting *Wardlow, supra*).

Generally, a tip is nothing more than information pertaining to an alleged criminal activity, which might be the basis for further investigation. *See Commonwealth v. Winbush*, 750 A.2d 807, 811-12 (Pa. 2000) ("When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned") (citation omitted).  The information here alerted the officers of the exact location and the approximate time of the delivery of a large amount of heroin.  According to the tip, the seller was a Hispanic male who operated a 1997, dark-colored, two-door Acura.  Based on this information, the officers set up a

surveillance team to check on the reliability of the information provided. Not too long after the surveillance team was in place, at least one officer saw Appellee getting out of a black, two-door Acura, which was parked in the general area where the drug transaction was to occur. After walking a short distance, Appellee showed up at the time and location agreed upon by the source and the Hispanic male. It was late at night, no one was present at that location, a "slightly residential and more business area," N.T. Hearing, 10/20/2014, at 18. Appellee appeared nervous while pacing back and forth at the location set for the drug transaction. While at the location, the officers decided to approach Appellee. When the officers approached Appellee, Appellee kept his right hand in the pocket, and refused to take the hand out, despite being asked by the officers to do so.

The foregoing shows officers did not stop Appellee merely because they heard from an "unnamed" source that he was a drug dealer in the northeast section of Philadelphia. Appellee was stopped because, *inter alia*, he showed up at the time and location set for completing a large transaction involving heroin. It was late at night in November. No one else was on that street except Appellee, a Hispanic male, who just got out of a black, two-door, Acura. Appellee appeared nervous while standing at the location. When the officers approached him, Appellee kept his right hand in a pocket of the jacket. Despite the officers repeatedly asking Appellee to take his right hand out of the pocket, Appellee refused to do so. The trial court

ignores that the "single factor of the defendant keeping his hand in his pocket after being asked to remove it escalated the encounter into one of reasonable suspicion." **Commonwealth v. Scarborough**, 89 A.3d 679, 684 (Pa. Super. 2014) (citing **Commonwealth v. Hall**, 713 A.2d 650 (Pa. Super. 1998), *reversed on other grounds,* 771 A.2d 1232 (Pa. 2001)). As we have discussed, not only is that same factor present here, but there are additional factors supporting a finding of reasonable suspicion. In light of the foregoing, we conclude that in light of the totality of the circumstances, the officers had reasonable suspicion to stop Appellee to investigate the tip. Accordingly, the trial court erred in concluding otherwise.

The trial court noted that the tipster was not reliable because he had not been used by the police previously as an informant. While the source might not have provided information to investigators in the past, that is not dispositive of the instant source's reliability. If that were the test, no informant would ever be able to meet the reliability test as understood by the trial court. There is always a first time for informants. If there were not, no one would ever qualify as reliable.

The trial court also noted that the fact the confidential source was a defendant in another criminal matter made the information provided less reliable. If anything, it made the information more reliable. The confidential source, known to the police, had no incentive in not telling the officers the truth. To the contrary, the informant had all incentives to be as helpful and

precise as possible. Our appellate courts "have recognized a known informant is far less likely to produce false information. A known informant's tip may carry sufficient "indicia of reliability" to justify an investigative detention despite the fact that it may prove insufficient to support an arrest or search warrant." *Brown*, 996 A.2d at 477. Indeed, "a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Commonwealth v Krisko*, 884 A.2d 296, 301 (Pa. Super. 2005).

In light of the foregoing, we conclude the trial court erred in suppressing the evidence obtained from the investigative detention.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2016

- 10 -