J-S65019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NADIR DELOATCH :
:
Appellant : No. 2083 EDA 2016

Appeal from the Judgment of Sentence May 11, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004338-2015,
CP-51-CR-0004339-2015

BEFORE: OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED JANUARY 29, 2018**

Nadir Deloatch appeals from the judgment of sentence imposed on May 11, 2016, in the Court of Common Pleas of Philadelphia County. The trial judge found Deloatch guilty at Docket No. 4338-2015 of robbery, possession of firearms prohibited, firearms not to be carried without a license, theft by unlawful taking – movable property, receiving stolen property, carrying firearms in public in Philadelphia, possession of an instrument of crime, simple assault, and recklessly endangering another person.[1] The trial judge found Deloatch guilty at Docket No. 4339-2015 of robbery, theft by unlawful taking – movable property, receiving stolen property, possession of an instrument of

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 6105(a)(1), 6106(a)(1), 3921(a), 3925(a), 6108, 907(a), 2701, and 2705, respectively.

crime, simple assault, and recklessly endangering another person.[2] Deloatch was sentenced to serve two concurrent terms of four and one-half to nine years' imprisonment, followed by five years' probation.[3] Deloatch claims (1) the trial court erred in denying his pretrial motion to exclude out-of-court and in-court identifications of Deloatch, (2) the trial court erred in denying the motion to suppress a firearm, paper money, and coins, (3) the trial court erred in denying Deloatch's motion *in limine* to exclude the mention of coins recovered by police, (4) the identification evidence was insufficient to sustain the guilty verdicts, (5) the verdicts were against the weight of the evidence, and (6) the sentence imposed constitutes an abuse of discretion by the trial court. [4, 5]  Based upon the following, we affirm.

The trial court has detailed the procedural history of this case, and we need not restate it herein.  **See** Trial Court Opinion, 4/20/2017, at 1-3. The

_____

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3921(a), 3925(a), 907(a), 2701, and 2705, respectively.

[3] The trial court imposed the concurrent sentences of 4½-9 years' imprisonment followed by five years' probation on the robbery charge at Docket No. 4338-2015 and the robbery charge at Docket No. 4339-2015. The trial court found the theft by unlawful taking charge at each docket merged with the robbery charge.  The trial court ordered no further penalty on the remaining charges at the respective dockets.

[4] Deloatch preserved these claims by timely complying with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[5] We have reordered Deloatch's issues to address the pretrial rulings first.

trial court has summarized the facts underlying Deloatch's convictions, as follows:

> On February 17, 2015 at approximately 8:25 PM, [Deloatch] entered a Hess gas station convenience store located at 330 Grays Ferry in Philadelphia holding a revolver with a silver barrel and black handle. He was wearing a mask, dark jacket, gray hoodie, blue jeans, and black shoes. Natacha Azor and Ayodeji Adeoye (Complainants) were each standing behind a cash register in the store. [Deloatch] walked straight towards the cash registers with the gun pointed at the Complainants. He told Azor to stay still and Adeoye to "hurry up and give [him] all the money in the register." [Deloatch] spent approximately five to six minutes inside the store during the robbery and took money and a cell phone from Complainants.
>
> At approximately 8:30 PM Complainants used the panic-button inside the store to contact police. Officer Raymond Sima arrived at the Hess Station in response to a call over police radio that a robbery alarm was set off. The Complainants informed him that [Deloatch] fled south after the robbery. Officer Sima put this information over the police radio. At approximately 8:33 PM, Officers Christopher Bartolo and Kathryn McChord of the Philadelphia Police Department heard Officer Sima's flash information over police radio that a black male with medium complexion approximately 5'7" tall wearing a dark jacket and blue pants with a firearm had robbed a convenience store located near the 3300 block of Grays Ferry Avenue in Philadelphia. Officers Bartolo and McChord were patrolling at the intersection of Napa and Dickinson Street in a police vehicle when they saw [Deloatch], who matched the flash description, walking south on Napa Street. **When the officers tried to speak with [Deloatch], he immediately ran away, continuing south on Napa Street.** Officer McChord exited the vehicle and chased [Deloatch] on foot. **As she chased him, McChord observed coins falling from his pockets and [Deloatch] holding his waistband.** Officer McChord lost her footing during the chase and fell, losing sight of [Deloatch] as he continued down Napa Street towards Tasker Street.
>
> **Officer Travis Clark, responding to the radio call, met Officer McChord immediately after she lost sight of**

**[Deloatch]. Officer Clark began searching the area and found a handgun loaded with six bullets on the street next to a parked car in front of 3104 Tasker Street.** In addition, Officer Palmiero found wrapped coins and loose change recovered from the 1500 block of Napa Street.

Officer Heng observed a suspect near Hollywood and McKean that substantially matched the flash information, but the suspect was not wearing a dark jacket. After Officer Heng stopped the suspect, both Complainants were taken to identify him. At approximately 9:40 PM, [Deloatch] was taken out of a police car in handcuffs and put under a spotlight in front of Complainants. [Deloatch] did not say anything. Both Complainants immediately identified [Deloatch] as the person who robbed the convenience store earlier that night. They recognized [Deloatch's] eyes, eyebrows, the skin above his eyebrows, body type, skin color, blue jeans, and black shoes.

Trial Court Opinion, 4/20/2017, at 3-5 (footnotes omitted) (emphasis in original).

In the first issue, Deloatch contends the trial court erred in denying the pretrial motion to exclude the two victims' out-of-court and in-court identifications of him. He claims the victims only had a few minutes to observe the perpetrator while focusing on the gun, and only being able to see eyes, nose and a tiny section of the perpetrator's hand. *See* Deloatch's Brief at 17. He argues the victims stated the perpetrator wore a dark jacket, which he did not have. *Id.* He further contends the confrontation was unduly suggestive because he was under arrest in a police car, surrounded by police and flashing dome lights, with a light focused on him. *Id.*

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings

are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa. Super. 2003) (citation and internal citation omitted).  Our scope of review is limited to the evidence presented at the suppression hearing. ***In the Interest of L.J.,*** 79 A.3d 1073, 1088-89 (Pa. 2013).

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

***Id***. at 976 (citation and internal citations omitted).

Deloatch's argument attempts to minimize the opportunity and ability the victims had to observe the perpetrator, and to emphasize his police custody at the time of the out of court identification.  However, this argument fails, given the detailed description of the perpetrator in the flash information that substantially matched how Deloatch appeared when the police spotted him on the street.  ***See*** N.T., 2/12/2016 (suppression hearing) (mislabeled

- 5 -

2/24/2016), at 16 (Officer Bartolo testifying Deloatch "fit the flash" information). **See also id.** at 15, 38 (flash information of a black male, medium complexion, about 5'7", with a mask, blue jeans, a dark jacket and a black handgun). Moreover, the detailed flash information describing the perpetrator defeats Deloatch's argument that the police identification procedure used for the victims to identify Deloatch was unduly suggestive and unreliable. Therefore, we conclude the trial court properly denied this aspect of Deloatch's suppression motion. **See** N.T., 2/29/2016 (suppression findings of fact and conclusions of law), at 11-15. Accordingly, Deloatch's first claim warrants no relief.

In his second issue, Deloatch contends "[t]he trial court erred in denying [the] motion to suppress the firearm as there was no reasonable suspicion or probable cause to approach, chase or otherwise force [Deloatch] to abandon any alleged contraband." Deloatch's Brief at 21.[6] He argues police did not have reasonable suspicion or probable cause to stop him because "[a]lthough [Deloatch] matched some of the flash information, it was substantially inconsistent, as well. [Deloatch] had no mask nor any dark jacket on." **Id.** at 21.

The principles that guide our review are, as follows:

Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution afford protections

---

[6] Deloatch does not mention "the paper money and coins recovered" as stated in his Statement of the Questions Involved. **See** Deloatch's Brief at 8.

against unreasonable searches and seizures. Among the protections is the requirement that an officer have reasonable suspicion before an investigatory stop.

Our [S]upreme [C]ourt has interpreted Article I, § 8 protection more broadly than the Fourth Amendment and has found that a seizure occurs when an officer gives chase. Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Stated another way, when one is unconstitutionally seized by the police, i.e., without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.

*In re M.D.,* 781 A.2d 192, 196 (Pa. Super. 2001) (citation, internal citations, and quotation marks omitted).

Here, the trial court rejected Deloatch's claim, explaining that police did have reasonable suspicion to stop him:

In our case, matching flash information gave the officers reasonable suspicion to stop [Deloatch] as he walked down the street. On February 17, 2015, at approximately 8:30PM, the police received a radio call that a robbery had taken place at the Hess Station located at 3300 Grays Ferry Avenue in Philadelphia. The suspect was described as wearing a dark jacket, blue jeans, and black shoes. Officers first spotted [Deloatch] on Napa Street four blocks south of the Hess Station. He was wearing a dark jacket, blue jeans, and black shoes. [Deloatch] closely matched the flash information describing the robbery suspect. It was reasonable for officers to stop [Deloatch] since a robbery had occurred and [Deloatch] generally matched the flash of the suspect.

It is also important to note that the investigating officers did not force [Deloatch] to abandon the money and firearm he was carrying just because they approached him. Their actions were not coercive. In *In re M.D.*, [781 A.2d 192, 196 (Pa. Super. 2001),] when officers asked the [a]ppellant to stop, he fled instead. Notwithstanding, the court held that the officers did not

- 7 -

coerce the [a]ppellant to abandon incriminating evidence simply because their approach caused him to flee. Similarly, when the officers approached [Deloatch] on Napa Street, he voluntarily abandoned his firearm and money. His actions gave the police further suspicion that he committed the crime. Just as importantly, the officers had reasonable suspicion to stop [Deloatch] because he matched the description of the robber. As the officers did not act improperly when they simply asked [Deloatch] to approach, his contention that incriminating evidence should be suppressed is unreasonable.

Trial Court Opinion, 4/20/2017, at 9-10. **See also** N.T., 2/29/2016 (suppression findings of fact and conclusions of law), at 8-11.

Based on our review, we conclude there is no basis upon which to disturb the trial court's determination. The trial court's findings are supported by the suppression record and we agree with the trial court's legal conclusions. **See Moye, supra**. Deloatch looked substantially similar to the description of the perpetrator reported in the police flash. Accordingly, police had reasonable suspicion to stop him. Therefore, we reject Deloatch's claim that the trial court erred in denying his motion to suppress the firearm.

Nor do we find merit in Deloatch's third claim that the trial court erred in denying his motion *in limine* to exclude mention of coins recovered that were never placed on an evidentiary property receipt.

The admissibility of evidence "rests within the sound discretion of the trial court, and therefore, we will reverse [the] trial court's decision . . . only if the appellant sustains the heavy burden to show that the trial court has abused its discretion." **Commonwealth v. Christine**, 125 A.3d 394, 398 (Pa. 2015) (citation and quotations omitted).

It is important to point out that, here, the Commonwealth did not seek to introduce the coins into evidence. Accordingly, there was no need for the Commonwealth to establish chain of custody with an evidentiary property receipt. *See In re D.Y.*, 34 A.3d 177, 185 (Pa. Super. 2011) ("Chain-of-custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial[.]"). Furthermore, as the trial court aptly reasoned:

> [T]he coins were documented on the officers' crime scene log even though there was no property receipt.[30] Therefore, the Court chose not to prevent the Commonwealth from mentioning the coins. [Deloatch] was also granted ample opportunity to cross-examine the officers on this point. Given the circumstances, the probative value of the evidence outweighed its prejudicial impact.[31]
>
> [30] N.T., February 24, 2016, at 7.
>
> [31] [Deloatch] further claims since the coins were not on a property receipt he did not have the opportunity to inspect them. However criminal defendants do not have an automatic right to inspect all evidence in possession of the prosecution. Had [Deloatch] formally asked the Court to give him an opportunity to inspect the coins either before or during trial, the Court may have granted his requests. Finally, even if the Court had excluded the coinage as evidence, the Commonwealth was still able to establish that [Deloatch] possessed paper currency. [Deloatch's] guilt was established by the paper contraband alone. Therefore, the Court did not err when it denied [Deloatch's] motion *in limine* to exclude the coins.

Trial Court Opinion, 4/20/2017, at 11-12. Based on our review, we discern no abuse of discretion in the trial court's ruling. Therefore, we reject Deloatch's third claim.

Next, Deloatch argues the evidence was insufficient to sustain the guilty verdicts because "there was no corroborating evidence that [Deloatch] committed any of the elements of the crimes as it was not proven beyond a reasonable doubt that [Deloatch] was present at the scene of the crime or possessed any proceeds from the robbery, and where the witnesses incredibly identified [Deloatch] when the perpetrator wore a mask." Deloatch's Brief at 17.

Our standard of review of a sufficiency claim is well settled:

Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [factfinder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Shull*, 148 A.3d 820, 844 (Pa. Super. 2016) (citation omitted).

Regarding the sufficiency of evidence of identification, the Pennsylvania Supreme Court has instructed:

Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight.

- 10 -

***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) (citations omitted).

Based on our review, we conclude that Deloatch's claim that the evidence was insufficient to prove he was the perpetrator warrants no relief. Deloatch seeks to have this Court review the evidence in the light most favorable to him. However, our standard of review requires us to view the evidence in the light most favorable to the verdict-winner, the Commonwealth. ***See Shull, supra***. Here, the two victims positively identified Deloatch, at the time of the crimes and at trial, as the person who committed the crimes charged. At the scene, their identification was immediate. ***See*** N.T., 3/4/2016, at 21; N.T., 3/7/2016, at 17-18. At trial, their identification was unequivocal. ***See*** N.T. 3/4/2016, at 17; N.T., 3/7/2016, at 14-15. Moreover, there was overwhelming circumstantial evidence that Deloatch was the perpetrator, namely, the victims' description of their assailant substantially matched Deloatch,[7] police observed coins falling from Deloatch's

_____

[7] The flash information for the suspect – which came from the victims – was a black male, about 5'7", medium complexion, wearing a mask, a dark jacket and blue jeans and a black handgun. N.T., 3/4/2016, at 28-29. One police unit spotted a male that matched the description. ***Id.*** at 28. ***See also*** N.T., 2/12/2016 (suppression hearing) (mislabeled 2/24/2016), at 15, 38. (All of the testimony and exhibits from the suppression hearing were incorporated into the evidence at the non-jury trial, ***see*** N.T., 3/7/2016, at 30.) When Officer Christopher Bartolo observed Deloatch, he was walking at a brisk pace, and was wearing a dark jacket, and blue jeans. N.T., 2/12/2016, at 16. Officer Bartolo further stated Deloatch was wearing a dark jacket with a gray hoodie. ***Id.*** at 21. However, when Deloatch was apprehended, he was not

pockets as he fled, and police recovered wrapped coins and loose change from the street where Deloatch had fled, and also located a gun on the street where Deloatch was seen heading by police. Accordingly, Deloatch's sufficiency claim fails.

Deloatch also challenges the weight of the evidence. However, this claim has been waived for appellate review.

> It is well settled that a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance. *See* Pa.R.Crim.P. 607(A); *Commonwealth v. Griffin*, 2013 PA Super 70, 65 A.3d 932, 939 (Pa. Super. 2013). Thereafter, appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa. Super. 2016) (citation omitted), *appeal denied*, 163 A.3d 403 (Pa. 2016). "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012) *(*citations omitted). *See* Pa.R.Crim.P. 607.

Here, Deloatch did not file a written post-sentence motion, nor did he challenge the weight of the evidence either prior to or during his sentencing hearing. Therefore, the trial court did not consider whether the verdict was

---

wearing a dark jacket. *Id.* at 22. During arrest processing, Deloatch indicated he was 5'7" and weighed 120 pounds. *See* N.T., 3/4/2016, at 45.

against the weight of the evidence, and, consequently, waiver applies to this claim.[8]

The final issue is a challenge to the discretionary aspects of the sentence. A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." **Commonwealth v. Best**, 120 A.3d 329, 348 (Pa. Super. 2015) (citation and internal citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted).

Deloatch complied with the procedural requirements for this appeal by presenting an oral post-sentence motion seeking modification of his sentence,[9] and a subsequent notice of appeal, and by including in his appellate

---

[8] We note the fact that Deloatch included this claim in his Pa.R.A.P. 1925(b) statement and the trial court addressed the claim in its opinion did not preserve the issue for our review absent the filing of an earlier motion. **See Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

[9] Following the May 11, 2016, sentence, the Commonwealth filed a motion for reconsideration of sentence and, on May 26, 2016, at a hearing on the motion,

brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f).[10] Therefore, we must determine whether he has raised a substantial question justifying our review.

A defendant raises a substantial question when he "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (citation omitted), *appeal denied*, ___ A.3d ___ (Pa. October 10, 2017).

Here, Deloatch cites 42 Pa.C.S. § 9721(b) ("the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant"). *See* Deloatch's Brief at 26-27. Deloatch claims the trial court's sentence "did not properly consider [Deloatch's] youth and likelihood of complete rehabilitation, his being the

---

Deloatch also orally objected to his sentence. *See* N.T., 5/26/2016. On June 1, 2016, the trial court denied both motions. *See* N.T., 6/1/2016, at 3.

[10] While Deloatch has ostensibly included a separate Rule 2119(f) statement in his amended brief, it simply states relevant legal tenets, and the statement of reasons relied upon for appeal is mistakenly combined with the argument of the claim. We will overlook this misstep, however, as it is one of form, not substance.

- 14 -

father of a young boy, and [Deloatch's] showing of remorse and acceptance of responsibility at sentencing, and familial support." Deloatch's Brief at 27. He also contends the trial court should have used the standard guidelines (36-48 months +/-12) at sentencing rather than the deadly weapons/used enhancement (54-66 months +/-12). *See id.* We conclude Deloatch presents a substantial question for our review. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question[.]"); *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) ("A substantial question is raised where an appellant alleges his sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement."). Therefore, we will proceed to review the discretionary aspects of Deloatch's sentence.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez,* 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

At sentencing, the trial court justified its sentence, stating:

> It's a very serious charge. I could have easily gone higher. But I can't go too low, because he needs to understand the

consequences of his actions. He simply can't go out there and stick up people with loaded guns. It's inappropriate.

And you're 22, but the bottom line is, you have to be responsible for your own actions and your conduct. … [Y]ou need to understand, before you go and stick somebody up with a loaded gun, what the consequences of your actions are.

****

The reason for the sentence is because, like I said, you are young. I do believe that there's a lot of redeeming value in you. You seem like a pretty nice young man overall. You're pretty articulate. My hope is that you go to school and learn a trade so that when you come out you can be a productive citizen. I think you will.

N.T., 5/11/2016, at 27-28, 29.   The trial court also explained, "under the

circumstances[,] I'm protecting society." *Id*. at 30.

Furthermore, in response to Deloatch's Pa.R.A.P. 1925(b) statement,

trial court expounded:

[W]hen sentencing a defendant, the trial court must consider certain circumstances regarding the offense and the defendant's character. *Com[monwealth] v. Boyer*, 2004 Pa. Super. 303, 856 A.2d 149, 154 (Pa. Super. 2004).  However, if the sentencing judge has considered the presentence investigation report, it will be presumed that he was aware of and considered all of the relevant circumstances in determining the appropriate sentence. *Id.*

While the sentencing court has discretion in these respects, it has "no discretion to refuse to apply the deadly weapons enhancement when it is appropriate". *Com. v. Raybuck*, 9[1]5 A.2d 125[,129] (Pa. Super. 2006). Under Pennsylvania code when an offender uses a deadly weapon, including a firearm, in a way that threatens or injures another individual they are subject to the deadly weapon enhancement in sentencing. 204 Pa. Code § 303.10(a)(2)(i).

Here the record shows that the Court considered many factors before it sentenced [Deloatch] including his age, severity of the

- 16 -

crime, potential for education, ability to be rehabilitated, and the fact he has a young child. The Court noted [Deloatch] is only 22 years old which is young. He was arrested for burglary at the age of 16. He has two marijuana convictions one of which was Possession with Intent to Distribute. It seems he had a fairly stable childhood as both of his parents were present in his life, his father spoke during sentencing, and there is no evidence of abuse. At sentencing [Deloatch] told the trial judge he plans to go to school for a computer technician program. Considering all circumstances the trial judge sentenced [Deloatch] to four and a half to nine years in jail followed by five years' probation. [Deloatch] recognized this range was not outside the maximum punishment allowed for this type of offense because his suggestion was a prison term of two to nine years. Therefore nothing about this sentence reveals manifest abuse by the trial judge. In fact, the Court heard [Deloatch's] motion to reconsider after the sentencing hearing, but it upheld the initial sentence.

[Deloatch] argued the minimum range of the sentence should be lower. The minimum range was given pursuant to the sentencing guidelines with the used deadly weapon enhancement. It is clear [Deloatch] used a firearm to threaten the Complainants. Therefore, the deadly weapon enhancement applies to [Deloatch's] sentencing and the incarceration term given by the Court was appropriate. The fact still remains this was a violent robbery committed with a firearm and there were two victims. The trial judge reiterated his initial sentencing was already fair. Clearly none of the actions by the trial judge in this case rise to the level of abuse of discretion.

Trial Court Opinion, 4/20/2016, at 21-22.

Based on our review of the record, and applying our deferential standard of review, we find no abuse of discretion in this sentencing decision. The trial court was aware of all mitigating circumstances and justified its sentence with a full explanation of all relevant sentencing factors. Furthermore, the trial court properly applied the deadly weapon/used enhancement since the record shows Deloatch used the weapon to threaten the victims while committing the

robbery. ***See, Shull, supra***, 148 A.3d at 832 (Pa. Super. 2016) (defendant's "mere possession of a gun transcended to his use of the gun" when he removed gun from under his clothing and pointed it at victim's face during attempted robbery). Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/29/18</u>